IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFORY SCHANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 8757 |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS UNION LOCAL NO. 710 | ) | |
| PENSION FUND PENSION PLAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On November 1, 2012, Plaintiff Jeffory Schane ("Mr. Schane") brought the present four-count Complaint against Defendants International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan (the "Plan") and Board of Trustees of the Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan (the "Board") alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Before the Court are both Defendants' and Plaintiff's motions for partial summary judgment as to Counts I and III of the Complaint pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' motion for partial summary judgment, denies Plaintiff's motion for partial summary judgment, and dismisses Counts I and III from this lawsuit with prejudice.

# BACKGROUND

## I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

## II. Administrative Record

First, Mr. Schane objects to Defendants' Local Rule 56.1(a)(3) Statement of Facts because the Court's review of the administrative decision in this ERISA matter is deferential, and thus limited to the administrative record. *See Perlman v. Swiss Bank Corp.,* 195 F.3d 975, 981-82 (7th Cir. 1999). Mr. Schane specifically argues that Defendants, through their Local Rule Statement of Facts, are introducing information that was not in the administrative record, which consists of the evidence submitted in support of the application for ERISA benefits. *See Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001) (when "evaluating a

plan administrator's decision under an arbitrary and capricious standard of review," courts "consider only the evidence that was before the administrator when it made its decision"); *Perlman,* 195 F.3d at 982 (under deferential review "courts are limited to the information submitted to the plan's administrator").

Defendants, on the other hand, maintain that the evidence in their Local Rule 56.1(a)(3) Statement of Facts consists of the record that was before the Plan's Administrator and Special Committee when they determined that Mr. Schane's pension payment amounts to $2,600 per month effective January 1, 2012. More specifically, Defendants introduced the administrative record through the affidavit of Brian O'Malley, the Plan Administrator of the Pension Fund, who laid the proper foundation for the attached exhibits, which are the administrative record. By introducing the administrative record through the O'Malley affidavit, the administrative record is of evidentiary quality for the Court to consider in the context of the present summary judgment motions. *See Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) ("In granting summary judgment, the court may consider any evidence that would be admissible at trial. The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.") (citation omitted); *Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 496 (7th Cir. 2006) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56[] and the affiant must be a person through whom the exhibits could be admitted into evidence."). As such, Mr. Schane's argument regarding Defendants' Local Rule Statement of Facts is misplaced.

### III. Relevant Facts

The International Brotherhood of Teamsters Union Local No. 710 Pension Fund (the "Pension Fund") is a multi-employer employee benefit trust fund. (R. 24, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) At all relevant times to this lawsuit, Mr. Schane was a participant in the Plan through his employment with Y.R.C. Roadway Express ("Roadway"), which is an employer subject to a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters Local No. 710 ("Union"). (R. 19, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 1, 7; Defs.' Stmt. Facts ¶ 16.) It is undisputed that the Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002(2) and that the Board is the administrator of the Plan. (Pl.'s Stmt. Facts ¶¶ 2, 3; Defs.' Stmt. Facts ¶ 6.) Currently, six trustees sit on the Board and Brian J. O'Malley serves as the Fund Administrator. (Defs.' Stmt. Facts ¶¶ 7, 9.)

Mr. Schane began working for Roadway in November 1983 and was a member of the Union throughout his employment with Roadway, which later merged with the Yellow Freight Company. (*Id*. ¶¶ 15, 17, 18.) While working for Roadway, Mr. Schane incurred a work-related injury on February 16, 2008, and thus began to receive workers' compensation. (*Id*. ¶ 20.) During the year from March 2008 to March 2009 when Mr. Schane was on workers' compensation, Roadway continued to make Plan contributions on his behalf pursuant to the CBA. (*Id*. ¶ 22.) Mr. Schane was medically released to return to work from April 2009 until March 2010, at which time he was re-injured, and thereafter, received workers' compensation leave. (*Id*. ¶ 23.) Mr. Schane remained on workers' compensation until he resigned from his employment with Roadway in December 2011. (*Id*. ¶ 24; Pl.'s Stmt. Facts ¶ 18.) Mr. Schane provided a copy of his letter of resignation to the Pension Fund on or around December 30, 2011.

(Def.'s Stmt. Facts ¶ 39.)

During his employment with Roadway, Mr. Schane earned 25.6 Future Pension Credits by August 1, 2009 and earned 0.4 Future Pension Credits through self-pay before the end of December 2009. (*Id.* ¶¶ 25, 26.) Since August 1, 2009, Roadway has not made any employer contributions for Mr. Schane to the Pension Fund and since December 31, 2009, Mr. Schane has not made any self-pay contributions to the Pension Fund. (*Id.* ¶¶ 27, 28.) At the end of 2009, Mr. Schane had a total of 26.1 Future Pension Credits. (*Id.* ¶ 29.)

In July 2009, Mr. Schane submitted his application for a pension to the Pension Fund. (*Id.* ¶ 30.) On his application, Mr. Schane did not fill in the line stating "Last day I worked or will work." (*Id.* ¶ 32; Pl.'s Stmt. Facts ¶ 11.) On March 19, 2010, Mr. Schane provided written notice to the Pension Fund that his final day for retirement purposes would be October 31, 2010. (Defs.' Stmt. Facts ¶ 34.) On August 31, 2010, however, Mr. Schane notified the Pension Fund that he was changing the date of his retirement from October 31, 2010 to October 31, 2011. (*Id.* ¶ 35.) Further, on September 26, 2011, Mr. Schane sent a letter to the Pension Fund that he would not be retiring on October 31, 2011, and on December 21, 2011, Mr. Schane notified the Pension Fund that he would be retiring on December 21, 2011, and that he would like his pension to be effective January 1, 2012. (*Id.* ¶¶ 36, 37.) Mr. Schane turned 50 years old in October 2011 and Roadway employed Mr. Schane until December 30, 2011. (Pl.'s Stmt. Facts ¶¶ 18, 19.)

The Plan determined that Mr. Schane had 26.1 pension credits and that he ceased covered employment in 2009 at the age of 48. (Defs.' Stmt. Facts ¶ 41.) Also, the Plan determined that Mr. Schane was entitled to Special Regular Pension for employees who retire under the age of

5

50, as described in Section 3.062(b)(i) of the Plan, and that Mr. Schane was entitled to a pension of $2,600 a month. (*Id.* ¶ 42; Pl.'s Stmt. Facts ¶ 41.) Mr. Schane appealed the calculation of his pension amount arguing that he had retired with 28 pension credits after the age of 50, and thus was entitled to a pension of $3,100 a month. (Defs.' Stmt. Facts ¶ 43; Pl.'s Stmt. Facts ¶ 43.) On February 23, 2012, a Special Committee of two trustees met to consider the appeal. (Defs.' Stmt. Facts ¶ 46, Pl.'s Stmt. Facts ¶ 44.) On March 5, 2012, the Special Committee issued a final administrative decision upholding the Plan's earlier decision to pay Mr. Schane a pension of $2,600 per month effective January 1, 2012. (Defs.' Stmt. Facts ¶ 48, Pl.'s Stmt. Facts ¶ 46.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for

6

summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

## ANALYSIS

**I.     Count I**

Because Count I of Mr. Schane's Complaint requests review of the denial of benefits, and it is undisputed that the Plan gives the Plan Administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court's review is governed under the arbitrary and capricious standard. *See Tompkins v. Central Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Reddinger v. SENA Severance Pay Plan,* 707 F.3d 702, 706 (7th Cir. 2013). Under the arbitrary and capricious standard, the Court will uphold the administrator's decision if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Tompkins*, 712 F.3d at 999 (citation omitted). In short, the Court looks to ensure that the administrator's decision has rational support in the record. *See Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 885 (7th Cir. 2012); *see also Jackman Fin. Corp. v. Humana Ins. Co.,* 641 F.3d 860, 864 (7th Cir. 2011) ("Under the arbitrary and capricious standard, we overturn the administrator's decision only where there is an absence of reasoning to support it."). Also, under this standard, the Court gives deference to the plan administrator's interpretation of the plan. *See Becker,* 691 F.3d at 890; *see also Hess v. Reg-Ellen Mach. Tool Corp.,* 423 F.3d 653, 662 (7th Cir. 2005) (courts "view the contractual ambiguity through a lens that gives broad discretion to the plan

7

administrator to interpret the plan.") (citation omitted).

In Count I of his Complaint, Mr. Schane alleges that because he retired after the age of 50, he is entitled to a larger monthly pension payment than $2,600 per month. Mr. Schane specifically argues that he retired for purposes of the Plan in December 2011, when he left his employment with Roadway and after he turned 50 in October 2011. The Special Committee's final administrative decision issued on March 5, 2012 addressed this argument as follows:

> Mr. Schane contends that he should receive a higher pension because he retired at age 50. Section 3.062(b)(ii) of the Pension Plan describes the benefits which are payable for a participant who Retires on or After Age 50 with twenty-five or more but less than thirty Future Pension Credits. "Retirement" or "Retires" means the cessation of being employed in Covered Employment (see Section 6.05). Covered Employment is defined in Section 1.09(b) as employment by an employer making contributions on behalf of the employee to the Fund. In Mr. Schane's case, his last contribution was made when he was forty-eight years old. Consequently, he did not satisfy the requirement of Retiring after age 50.

(R. 25, O'Malley Aff., Ex. 14, 3/5/12 Admin. Decision, at 2; Defs.' Stmt. Facts ¶¶ 48-50.)

The Plan defines "Covered Employment" under Section 1.09 as follows: "Covered Employment ... shall mean employment by an Employer making contributions on behalf of the employee to the Trust Fund." (Defs.' Stmt. Facts ¶ 53; Pl.'s Stmt. Facts ¶ 27.) Section 6.05(a) of the Plan, titled "Retirement or Retires" states;

> (a) Before attainment of Normal Retirement Age, "Retirement" or "Retires" means cessation of being employed in Covered Employment *or* engaging in any of the following:
>
> > (i) employment with any Contributing Employer;
> >
> > (ii) employment in the same or related business as any Contributing Employer;
> >
> > (iii) self-employment in the same or related business as any Contributing Employer;
> >
> > (iv) employment or self-employment in any business which is under the

8

> jurisdiction of the Union at the time of such Retirement; or
>
> (v) employment or self-employment commencing on or after January 1, 2000, by an employer, other than a government agency, in any position covered by a Teamster contract between that employer and any affiliate of the International Brotherhood of Teamsters or employment in the same job classification as are other Participants then employed by any Contributing Employer. Effective June 7, 2004, and after any participant meeting the employment or self-employment positions in subsection 6.05(a)(v) may not have their benefit suspended.

(Defs.' Stmt. Facts ¶ 54; Pl.'s Stmt. Facts ¶ 28.) (emphasis added).

Here, it is undisputed that since August 1, 2009, Roadway did not make any employer contributions for Mr. Schane to the Pension Fund and since December 31, 2009, Mr. Schane has not made any self-pay contributions to the Pension Fund. Also, the parties do not dispute that Mr. Schane turned 50 in October 2011, approximately two years after Roadway stopped making employer contributions to the Pension Fund. Therefore, the Special Committee's decision that Mr. Schane was not 50-years-old when Roadway stopped making contributions on his behalf in 2009 is a reasoned explanation based on the evidence. *See Tompkins*, 712 F.3d at 999. In other words, based on the undisputed facts and the unambiguous language of the Plan, the Special Committee communicated specific reasons for its determination and these reasons have support in the record. *See Becker*, 691 F.3d at 885; *Frye v. Thompson Steel Co., Inc.,* 657 F.3d 488, 492 (7th Cir. 2011).

Nevertheless, Mr. Schane argues that Special Committee erred because it misconstrued the definition of "Retire" by ignoring whether he engaged in any of the precluded activities in Section 6.05(a)(i)–(v). Section 6.05(a) of the Plan, however, clearly sets forth these precluded activities in the disjunctive — "Before attainment of Normal Retirement Age, "Retirement" or "Retires" means cessation of being employed in Covered Employment *or* engaging in any of the

9

following...." (Defs.' Stmt. Facts ¶ 54; Pl.'s Stmt. Facts ¶ 28) (emphasis added). Accordingly, under federal common law principles of contract interpretation, which apply in the context of interpreting ERISA plans, these five precluded activities are expressed in the alternative. *See Frey,* 657 F.3d at 493; *Marquette General Hosp. v. Goodman Forest Indus.,* 315 F.3d 629, 633 (6th Cir. 2003) ("Contrary to Plaintiffs' assertion, the word *or* does not also mean *and*. Any other reading constrains the clear meaning of the language. As this court has previously held, ERISA plans should be interpreted 'according to their plain meaning, in an ordinary and popular sense.'") (citation omitted) (emphasis in original). Therefore, the Special Committee's interpretation of Section 6.05(a) of the Plan was not in error because the committee read this plain, unambiguous language in the alternative. Accordingly, the Special Committee's application of the terms of the Plan was not arbitrary and capricious. *See Becker,* 691 F.3d at 890. The Court, therefore, grants Defendants' motion for partial summary judgment as to Count I and denies Plaintiff's motion for partial summary judgment regarding Count I.

## II. Count III

Next, in the alternative, in Count III of his Complaint, Mr. Schane alleges that because the Special Committee determined that he was retired in 2009 under Section 6.05(a) of the Plan, he is owed two years of pension payments because his annuity did not begin until January 2012, even though he remained on workers compensation until he resigned from his employment with Roadway in December 2011. Put differently, Mr. Schane contends that because he met all of the Plan's eligibility criteria in July 2009, he should have received pension payments since August

2009.[1]

Article 3, "Pension Eligibility and Amounts, provides the following eligibility conditions for a Special Regular Pension under Section 3.061:

> A Special Regular Pension will be paid to a Participant who Retires and meets the following requirements:
>
> (a) he applies in writing for a Pension in a form prescribed by the Trustees and the written application is received by the Pension Fund Office during the Participant's lifetime;
>
> (b) he is living on the Annuity Starting Date of his Pension; and
>
> (c) he has 25 or more years of Future Pension Credits . . . .

(Pl.'s Stmt. Facts ¶ 20; Defs.' Stmt. Facts ¶ 55.)

Defendants argue that Mr. Schane failed to fulfill the first requirement to be eligible for his pension to start in August 2009. More specifically, Defendants maintain that because Mr. Schane did not supply his final retirement date until December 2011, his application was not complete in the "form prescribed by the Trustees" until then. Indeed, it is undisputed that Mr. Schane did not provide his final retirement date until December 21, 2011, although he submitted his application for a pension in July 2009.

---

[1] Although Mr. Schane did not make this argument to the Plan or the Special Committee, he has exhausted his ERISA claims because he appealed the Plan's decision and ERISA does not require "issue exhaustion." *See Vaught v. Scottsdale Healthcare Corp. Health Plan,* 546 F.3d 620, 632 (9th Cir. 2008) ("The non-adversarial nature of the ERISA proceeding weighs against imposing an issue-exhaustion requirement."); *Wolf v. Nat'l Shopmen Pension Fund,* 728 F.2d 182, 186 (3d Cir. 1984) ("The Pension Fund cites no case, nor are we aware of any case which holds that a district court cannot decide a claim relying on a theory different from that presented to the Trustees of the Pension Fund.... [Plaintiff] should not be denied our consideration of this claim simply because she relies on an alternate theory."). Moreover, Defendants admitted that Mr. Schane exhausted his administrative remedies. (Pl.'s Stmt. Facts ¶¶ 5, 48.)

Furthermore, Defendants contend that because Mr. Schane did not send the Pension Fund a copy of his letter of resignation to Roadway until December 30, 2011, Mr. Schane's pension application was not complete until December 2011.  Article 6 of the Plan, "Applications, Benefit Payments, and Retirement," specifically, Section 6.03, provides that a copy of a participant's resignation must accompany an application for benefits and it is undisputed that Mr. Schane did not provide the Pension Fund with a copy of his resignation until December 30, 2011.  (Def.'s Stmt. Facts ¶ 39; Pl.'s Stmt. Facts ¶ 36.)  Nonetheless, Mr. Schane argues that he was not required to provide a copy of his resignation letter to be eligible for his pension payments because resignation is not an eligibility requirement in Section 3.061, as outlined above.  Mr. Schane's interpretation, however, treats the unambiguous Plan language requiring a copy of his resignation letter as superfluous and also ignores Section 6.02, in which the Plan grants the Board discretion to impose this requirement, namely, "[a]ll applications for Pensions or benefits must be made in writing in the form and manner prescribed by the Trustees."  (R. 19-6, Ex.3, 2010 Plan, at 60.)  It is well-established that the "interpretation of language in a plan governed by ERISA is controlled by federal common law, which draws on general principles of contract interpretation," and that "[p]lan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement."  *Schultz v. Aviall, Inc. Long Term Disability Plan,* 670 F.3d 834, 838 (7th Cir. 2012).  Considering these separate provisions in light of one another in the context of the whole Plan, Mr. Schane did not complete his application in the "form prescribed by the Trustees" until December 2011.  *See id.*; *see also Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010).  As such, Mr. Schane is not eligible to recover

pension payments starting in August 2009.

Therefore, the Court grants Defendants' motion for partial summary judgment as to Count III of the Complaint and denies Plaintiff's motion for partial summary judgment as to Count III. On July 12, 2013, Mr. Schane voluntarily dismissed Count II of his Complaint from this lawsuit, and thus, because the Court grants Defendants' partial motion for summary judgment as to Counts I and III, the only remaining claim in this lawsuit is Mr. Schane's claim brought pursuant to 29 U.S.C. § 1132(a)(3) as alleged in Count IV.

## CONCLUSION

For these reasons, the Court grants Defendants' partial motion for summary judgment, denies Plaintiff's partial motion for summary judgment, and dismisses Counts I and III from this lawsuit with prejudice.

**Dated:** November 22, 2013

                                    **ENTERED**

                                    _____
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**